O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA J. BOURBONNAIS, | Case No. EDCV 15-1381-KES |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Barbara J. Bourbonnais ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying her application for Social Security Disability Insurance benefits ("DIB"). For the reasons discussed below, the Court concludes: (1) the ALJ properly evaluated Plaintiff's treating and examining physicians' opinions; and (2) the ALJ gave clear and convincing reasons for discounting Plaintiff's credibility. The ALJ's decision is therefore AFFIRMED.

/ / /

/ / /

## I.
## BACKGROUND

Plaintiff applied for DIB on March 21, 2011, alleging the onset of disability on June 2, 2009. Administrative Record ("AR") 283-91. On October 3, 2012, an ALJ conducted a hearing, at which Plaintiff, who was represented by non-attorney representative, appeared and testified. AR 47-78.

On October 10, 2012, the ALJ issued a written decision denying Plaintiff's request for benefits. AR 107-26. The ALJ found that Plaintiff had the severe impairments of osteoarthritis, degenerative disc disease and chronic fatigue syndrome. AR 112. Notwithstanding these physical impairments, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations: lifting/carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking for four hours out of an eight-hour work day, but no more than one hour at a time with regular breaks; and sitting for six hours out of an eight-hour work day, with regular breaks. AR 115. Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could still perform her past relevant work as a clown or a school secretary, and that she is therefore not disabled. AR 119-20.

By Order dated May 27, 2014, the Appeals Council vacated that decision and remanded the matter for a new decision, directing that certain newly submitted evidence be considered in evaluating Plaintiff's RFC. AR 127-31. By subsequent decision dated July 23, 2014, the ALJ found that Plaintiff has the same severe impairments and same RFC which permits her to perform a reduced range of light work, including her past work, such that she is not disabled. AR 23-35.

/ / /

/ / /

## II.
## ISSUES PRESENTED

<u>Issue No. 1</u>: Whether the ALJ provided specific and legitimate reasons for granting little or no weight to the mental function assessments of treating psychiatrist Summerour.

<u>Issue No. 2</u>: Whether the ALJ provided specific and legitimate reasons for granting little or no weight to the physical function assessments of treating family practitioner Laughlin and examining orthopedist Steiger.

<u>Issue No. 3</u>: Whether the ALJ's finding that Plaintiff's claims are not credible to the extent alleged is supported by clear and convincing evidence. <u>See</u> Dkt. 20, Joint Stipulation ("JS") at 5.

## III.
## DISCUSSION

**A.** **The ALJ Gave Specific and Legitimate Reasons For Rejecting the Opinions in the Mental Function Assessments of Treating Psychiatrist Dr. Summerour.**

**1.    Dr. Summerour's Opinions.**

Plaintiff has been visiting psychiatrist Robert Summerour since at least 2009 on a weekly to bimonthly basis. AR 856; AR 864-907 (treatment records). On May 27, 2011, Dr. Summerour completed a Psychiatric/ Psychological Impairment Questionnaire concerning Plaintiff. AR 856-63. The questionnaire form defines a "marked" limitation as one that "effectively precludes" performing an activity, while a "moderate" limitation is defined as one that "significantly affects but does not totally preclude" the activity. AR 858.

Using these definitions, Dr. Summerour found Plaintiff to be "markedly limited" in her abilities to understand, remember, and carry out detailed instructions (AR 859); to maintain attention and concentration for extended

periods (AR 859); to complete a normal workweek without interruptions from psychological symptoms (AR 860); to perform at a consistent pace without rest periods of unreasonable quantity and length (AR 860); to accept instructions and respond appropriately to criticism from supervisors (AR 860); and to travel to unfamiliar places or use public transportation (AR 861). He also found her "moderately limited" in her abilities to carry out simple one- and two-step instructions (AR 859); to perform activities within a schedule, maintain regular attendance and be punctual within what is customarily tolerated (AR 859); to sustain an ordinary routine without supervision (AR 859); to interact appropriately with the general public (AR 860); and to get along with coworkers without distracting them or exhibiting behavioral extremes (AR 860). He affirmed that she was being prescribed Cymbalta, Ativan, ReQuip, and Trazodone and acknowledged that she was taking additional pain medications prescribed by other doctors. AR 861. He found that the indicated limitations applied starting December 1, 2008. AR 863.

On July 19, 2012, Dr. Summerour wrote a summary report regarding Plaintiff's condition and continuing treatment. AR 1045. He affirmed the same functionality limitations as he set forth in his earlier assessment from May of 2011. AR 1045.

### 2. The ALJ's Analysis.

The ALJ did not find that Plaintiff has any psychological impairment that would cause "more than minimal limitations" on her ability to perform work activities and therefore characterized her diagnosed depression as "non-severe." AR 113; 20 C.F.R. § 404.1521(a) (defining a "severe" impairment as one that has more than a minimal impact on a claimant's ability to do basic work activities). The AJL gave Dr. Summerour's opinions as expressed in the questionnaire "little weight" because they are "inconsistent with the record …." AR 114. As an example of this inconsistency, the ALJ cited to Dr.

Summerour's own progress notes ranging from February 17, 2010 to January 12, 2012. AR 114, citing AR 864-87, AR 940-51. In these progress notes with one exception, Dr. Summerour either checked findings of "no cognitive impairment" and "no memory impairment" or left that area of the form blank. AR 864-87; see also AR 945 (9/8/11 progress note stating that Plaintiff is "working").[1] The form says, "No mark indicates symptom not present." See, e.g., AR 864. Indications of "no cognitive impairment" and "no memory impairment" are inconsistent with his opinions expressed in the May 2011 questionnaire that Plaintiff is "markedly limited" in her ability to understand, remember, and carry out detailed instructions and "moderately limited" in her ability to carry out even simple one- and two-step instructions. AR 859.

At the hearing, the ALJ told the parties that Dr. Summerour's treating "records don't support" the opinions he expressed in the questionnaire. AR 75-76.

### 3. Applicable Law.

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did neither. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is generally entitled to more weight than that of an examining physician, and an examining physician's opinion is generally entitled to more weight than that of a non-examining physician. Id. When a treating or examining physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and

---

[1] The July 3, 2011 note indicates "yes memory impairment" but leaves "cognitive impairment" blank. There is also no mark for "poor concentration," indicating that symptom was not present. AR 950.

convincing" reasons. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008); Lester, 81 F.3d at 830. When it is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. Id.

An ALJ need not accept the opinion of any physician, however, if it is brief, conclusory, and inadequately supported by clinical findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). The weight given a physician's opinion, moreover, depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other things. 20 C.F.R. § 404.1527(c)(3)-(6).

**4. Standard of Review.**

Plaintiff admits that Dr. Summerour's opinions are contradicted by non-examining physician R. Paxton and non-examining psychologist Michael Cremerius. JS 11. Dr. Paxton reviewed the treating records from Dr. Summerour (i.e., Riverside Psychiatric Medical Group) and concluded, "Claimant with ongoing treatment for depression …. Condition appears non-severe." AR 85-86. Dr. Cremerius also examined Dr. Summerour's treating records and determined that Plaintiff's depressive disorder was non-severe, such that she had no difficulties with social functioning or maintaining concentration, persistence or pace. AR 99-100. Plaintiff contends, however, that these two non-examining opinions are not "substantial evidence" because they are not supported by other independent evidence in the record, such that Dr. Summerour's opinions should be viewed as uncontradicted and discounted only for "clear and convincing" reasons. JS 11, citing Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent

evidence in the record").

Contrary to Plaintiff's assertions, the opinions of non-examining doctors Paxton and Cremerius that Plaintiff's psychological limitations are non-severe are supported by independent evidence in the record, namely Plaintiff's daily activities. See AR 350-53 (Plaintiff is able to read, send emails, use Facebook, shop online, follow written or spoken instructions "well," co-lead a Bible study and get along well with others). Therefore, the ALJ needed only a "specific and legitimate reason" to discount Dr. Summerour's opinions.

**5. Analysis.**

An ALJ may discredit treating physicians' opinions that are conclusory, unsupported by the record as a whole, or by objective medical findings. Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1195 (9th Cir. 2004) (finding ALJ gave "specific and legitimate reasons" for discounting opinions of a treating physician where the opinions were in the form of a checklist and conflicted with other medical evidence).

The ALJ gave Dr. Summerour's remarks little weight because they were inconsistent with the record, including Plaintiff's treatment history and clinical findings as reported in Dr. Summerour's own notes. AR 29, 864-909, 940-951, 1032-1028, 1120. Dr. Summerour's opinions included an opinion that Plaintiff was (1) effectively precluded by her psychological impairments from understanding, remembering, and carrying out detailed instructions, and (2) her psychological impairments significantly affected her ability to carry out simple one- and two-step instructions. AR 859.

The ALJ did not err in concluding that these opinions of moderate to marked cognitive limitations are not supported by the treatment notes or the record as a whole. Dr. Summerour's treatment notes largely report that Plaintiff has no level of cognitive or memory impairment, not even mild. AR 864-87, AR 940-51. Considering the record as a whole, when Plaintiff was

asked to assess her own functionality, she admitted that she can follow written or spoken instructions "well." AR 353. She also regularly engages in activities that require a higher level of cognitive functioning than following simple instructions, such as reading, journaling, using email, using Facebook, shopping online, and being the co-leader of a Bible study group. AR 348, 351-53. Thus, the ALJ gave a specific and legitimate reason for discounting Dr. Summerour's opinions that was supported by substantial evidence in the record. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (finding that ALJ properly rejected treating physician's opinion that was extreme in light of the findings).

Dr. Summerour's treatment note forms also allow him to indicate if the patient has mild, moderate or severe symptoms in any of the following areas: mood instability, poor impulse control, and conduct/behavioral problems. See, e.g., AR 864. There are no marks indicating that Plaintiff ever displayed any of these symptoms. AR 864-909, AR 940-51. Having no symptoms in these areas appears inconsistent with assessing Plaintiff as "markedly" limited in her ability to accept instructions and respond appropriately and "moderately" limited in her ability to interact appropriately with the general public and get along with coworkers. AR 860. Plaintiff herself reported that she has no problems getting along with family members, friends, neighbors and others, and that she gets along with authority figures "well." AR 3553-54.

It is the sole province of the ALJ to resolve conflicts in the medical-opinion evidence. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Lingenfelter v. Astrue, 504 F.3d 1028, 1042 (9th Cir. 2007) ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999)

(holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports). Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Accordingly, remand is not warranted on this issue.

**B.** **The ALJ Gave Specific and Legitimate Reasons For Rejecting the Opinions in the Physical Function Assessments of Treating Family Practitioner Laughlin and Examining Orthopedist Steiger.**

**1.** **Relevant Medical Opinions.**

Plaintiff has been seeing family practitioner Sharon Laughlin since August of 2008 as her primary care physician (AR 785). On April 19, 2011, Dr. Laughlin completed a Multiple Impairment Questionnaire based on her treatment of Plaintiff. On December 20, 2012, on referral from her attorneys, Plaintiff presented to orthopedic surgeon Ralph Steiger for examination and evaluation. AR 1121-36. He also completed a Multiple Impairment Questionnaire dated February 20, 2013. AR 1146- 53.

Plaintiff was also examined by agency doctor Philip Wirganowicz. AR 910-17. The ALJ granted "significant" weight to the assessments of Dr. Wirganowicz, which are far less restrictive than those of Drs. Laughlin or Steiger. AR 33. The following chart comparing all three doctors' opinions highlights the differences:

| Task | Wirganowicz | Laughlin | Steiger |
| --- | --- | --- | --- |
| Sitting (per 8-hour day) | 4 hours with appropriate breaks (AR 916) | 1 hour (AR 777) | 1-2 hours (AR 1148) |
| Standing or Walking (per 8-hour day) | 4 hours with appropriate breaks (AR 916) | Less than 1 hour (AR 777) | 2-3 hours (AR 1148) |
| Lifting/Carrying | 25 pounds frequently or | 10 pounds | 10 pounds |

9

| | | | |
|---|---|---|---|
| | occasionally (AR 916); Full motor strength/no atrophy (AR 915) | occasionally (AR 778) | occasionally (AR 1149) |
| Grasping | Normal range of motion for wrists and fingers (AR 915); Can do gross motor and fine manipulative movements (AR 916) | Moderate right and left limitations (AR 778) | Moderate right and left limitations (AR 1149) |
| Reaching | Normal range of motion for shoulders and elbows (AR 915) | Moderate right and left limitations (AR 779) | Moderate right and left limitations (AR 1150) |
| Pushing, Pulling, Kneeling, Bending, Stooping | Full range of spinal motion (AR 914); Full motor strength (AR 915) | None (AR 781) | None (AR 1152) |
| Resting | None specified beyond regular breaks | 30 minutes per hour or work (AR 780) | 10-15 minutes per 30 minutes of work (AR 1151) |
| Missing work | None specified beyond regular rate | More than 3 days per month (AR 781) | More than 3 days per month (AR 1152) |

## 2. Standard of Review.

As summarized above, the opinions of treating physician Dr. Laughlin are contradicted by those of examining internist Dr. Wirganowicz. As a result, the ALJ could reject Dr. Laughlin's opinions upon providing a "specific and legitimate" reason supported by substantial evidence.

Because Dr. Steiger was merely an examining physician, the ALJ could discount his opinions based on a "specific and legitimate" reason supported by substantial evidence. Furthermore, Dr. Steiger rendered his opinions "after the date last insured." AR 34; AR 297, 1121-36 (Plaintiff's insured status expired

10

after September 30, 2012 and Dr. Steiger examined her on December 20, 2012).  An ALJ can legitimately give less weight to retrospective opinions. Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995).

**3.    Analysis.**

While the ALJ gave several reasons for discounting the opinions of Drs. Laughlin and Steiger, only one specific and legitimate reason is required to avoid remand.  One reason given for discounting Dr. Laughlin's opinions is that they are inconsistent with Plaintiff's activities of daily living.  AR 34.  So too for Dr. Steiger, the ALJ found his opinions were "inconsistent with the record as a whole."  AR 34.  "Inconsistency between a physician's opinion and the claimant's daily activities suffices as a specific and legitimate reason for discounting the physician's opinion if supported by substantial evidence from the record as a whole."  Lindquist v. Colvin, 588 Fed. App'x 544, 546 (9th Cir. 2014).

The ALJ's finding of inconsistency is supported by substantial evidence. For example, both Drs. Laughlin and Steiger opined that Plaintiff cannot engage in any bending or stooping.  AR 781, 1152.  Plaintiff's typical activities, however, include activities that require occasional bending or stooping. Plaintiff can fill and unload the dishwasher which involves "a lot of bending" (AR 56, 350), wash and fold laundry (AR 350), get in and out of a car (AR 51), shave her own legs (AR 349), and clean the cat litter box (AR 349).

Dr. Laughlin opined that Plaintiff can only sit, stand or walk for at most 1 hour each day.  AR 777.  In other words, Plaintiff must spend all day lying down, but for 1 hour.  Dr. Steiger opined that Plaintiff must spend all but 3 hours each day lying down.  AR 1148.  These opinions are not consistent with Plaintiff's self-reported daily activities.  Plaintiff admits that most days she gets out of bed and engages in tasks including light housework, easy meal preparation, cat care, using the computer, watching her grandchildren or other

social interactions and running errands in the car. AR 62, 63, 349-52. Plaintiff does not spend the vast majority of her days in bed.

Drs. Laughlin and Steiger opined that for every hour or half-hour worked, Plaintiff would need to rest for a half-hour or fifteen minutes. AR 780, 1151. In other words, Plaintiff must rest for half the duration of any task that she performs. Again, these extreme opinions are not consistent with Plaintiff's reported activities. She is able to go to church and co-lead a women's Bible study group. AR 352. She reported that she can pay attention for 2 hours at a time. AR 353. During her period of claimed disability, she was able to drive from Riverside to Morrow Bay with one break to eat lunch and walk around. AR 51-52. She is able to sit through a movie, sit through Friday "date night" with her husband, and sit through dinner with her daughter twice a month. AR 64, 67, 352.

The ALJ listed and summarized Plaintiff's self-reported activities. AR 31-32. The ALJ's findings that the extreme physical limitations assessed by Drs. Laughlin and Steiger are inconsistent with these activities are supported by substantial evidence in the record. Thus, the ALJ did not err in discounting the opinions of Drs. Laughlin or Steiger.

**C.  The ALJ Gave Clear and Convincing Reasons for Discounting Plaintiff's Testimony Concerning the Severity of Her Symptoms.**

   **1.  Applicable Law.**

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. See Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009); Lingenfelter, 504 F.3d at 1035-36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter, 504 F.3d at 1036. If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester, 81 F.3d at 834; Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen, 80 F.3d at 1283-84 & n.8. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch, 400 F.3d at 681.

The ALJ may also use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for lying and inconsistencies in his statements or between his statements and his conduct. Id. at 1284; Thomas, 278 F.3d at 958-59.

**2.  Analysis.**

The ALJ set forth several reasons for finding Plaintiff's subjective

complaints not credible, among them that disabling pain and fatigue are inconsistent with Plaintiff's considerable daily activities. AR 31-32. Plaintiff is able to do laundry, leave the house four to five times a week to go to doctor appointments and run errands, has been on several vacations, cooks, watches movies, goes shopping, attends church and Bible studies, uses Facebook, visits with her daughter and grandchildren, sees high school friends, has speaking engagements, and takes walks. AR 29, 31-32, 51, 58, 63, 65, 346-355, 456, 685, 730. If a claimant "engages in numerous daily activities involving skills that could be transferred to the workplace," then the ALJ may discredit the claimant's allegations of disabling pain upon making specific findings relating to those activities. Burch, 400 F.3d at 681; see also Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. Cal. 1989) ("[I]f despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working."].) "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012).

     Plaintiff contends that the evidence of her daily activities does not undermine her allegations of disabling pain and fatigue because there is no evidence that she spends a "substantial part" of her day engaged in them. JS 34, citing Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001). In Vertigan, the claimant was "able to go grocery shopping with assistance, walk approximately an hour in the malls, get together with her friends, play cards, swim, watch television, and read." Id. at 1149. The ALJ relied on this evidence to conclude that the claimant's daily activities "involved physical functions that were inconsistent with her claims of pain." Id. at 1150. The

Ninth Circuit determined that this conclusion was not supported by substantial evidence, because "these physical activities did not consume a substantial part of [the claimant's] day" and because walking and swimming are activities that one might do for therapeutic reasons despite pain. Id.

In other cases, the Ninth Circuit has upheld a determination that the claimant's daily activities are inconsistent with testimony describing disabling pain. See, e.g., Burch, 400 F.3d at 680 (upholding adverse credibility determination based on claimant's ability to care for personal needs, cook, clean, shop, manage finances, and interact with boyfriend); Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999) (claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work); Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1991) (claimant's ability to "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries … may be seen as inconsistent with the presence of a condition which would preclude all work activity").

If evidence concerning a claimant's daily activities may rationally support either an adverse credibility determination or a finding of disability, the District Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." Burch, 400 F.3d at 680-81, citing Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). Again, reviewing courts must give the ALJ's determination of a claimant's credibility "great weight." Weetman, 877 F.2d at 22.

Here, Plaintiff's self-reported activities are greater than those in Vertigan; Plaintiff is more similar to the claimants in Burch, Morgan and Curry. Plaintiff is able to care for her personal needs (AR 349), prepare easy meals (AR 350), do light housework (AR 350), shop for some groceries and other items (AR 351), manage finances (AR 351), engage in social interactions (AR

15

352), provide child care (AR 349), and drive (AR 50-52). Moreover, there is evidence in the record that these activities comprise a substantial portion of her waking hours. She takes care of her personal needs on a daily basis (AR 349), prepares meals for 15-30 minutes at least five times a week (AR 350), identifies various household chores that she performs as taking times ranging from 15 minutes to multiple 40-minute sessions (AR 350), does grocery shopping once a week (AR 352), goes out to shop approximately 7 hours each month (AR 351), sometimes walks the dog (AR 351) and has other outings such as church twice a month, Bible study once a week, Jenny Craig appointments, visiting her mother-in-law's home on a "regular basis" and visiting her doctors' offices (AR 352). She has dinner out at least once a week (AR 352), cares for her grandchildren approximately once a week (AR 352), uses Facebook twice a week, and uses email five times a week (AR 352).

  Considered collectively, this evidence shows that activities requiring skills transferable to the workplace comprise a substantial portion of Plaintiff's typical day. Just as in Burch, Morgan and Curry, this evidence rationally supports an adverse credibility determination, because it undermines Plaintiff's testimony that she is too disabled to perform even light or sedentary work. Thus, the ALJ gave a clear and convincing reason, supported by substantial evidence in the record, for discounting Plaintiff's testimony concerning the severity of her pain and fatigue. AR 31-32.

//
//
//
//
//
//
//

## IV.
## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

Dated: May 12, 2016

*Karen E. Scott*
_____
KAREN E. SCOTT
United States Magistrate Judge